LIEBHAUSER, Plaintiff, vs. MILWAUKEE ELECTRIC RAILWAY & LIGHT COMPANY, Appellant, and KROSCHER, Respondent.

*March 9—May 1, 1923.*

*Pleading: Cross-complaint: When proper: Subject matter of action.*

Plaintiff brought an action against two defendants for personal injuries alleged to have been sustained while a passenger on one of defendant's street cars as the result of a collision between such street car and an automobile owned by defendant K., the "subject matter" of the action being her right to have defendants exercise ordinary care in respect to her person, and for the invasion of which right the action was brought. In a cross-complaint by defendant K. against the street railway company, alleging negligence in the operation of the street car which resulted in the collision, his cause of action, if any, arising because of the failure of the street railway company to exercise the required degree of care toward him, and being complete before plaintiff's cause of action arose, it cannot be said that the relief demanded involved the transac-

Liebhauser v. Milwaukee E. R. & L. Co. 180 Wis. 468.

tion which was the "subject matter" of plaintiff's action, and was not permissible under sec. 2656a, Stats., providing that a defendant may have affirmative relief against a codefendant, but such relief must involve the transaction which is the "subject matter" of the action. VINJE, C. J., and ESCHWEILER and JONES, JJ., dissent.

APPEAL from an order of the circuit court for Milwaukee county: E. T. FAIRCHILD, Circuit Judge. *Reversed.*

The plaintiff sues both the defendants to recover damages for personal injuries she claims to have sustained while a passenger on one of defendant *Milwaukee Electric Railway & Light Company's* street cars, as the result of a collision between such street car and an automobile owned and driven by the defendant *Julius Kroscher.* In the complaint the plaintiff alleges that each of the defendants was negligent. The *Milwaukee Electric Railway & Light Company,* hereinafter called the "company," answered by way of a general denial. The amended answer of the defendant *Julius Kroscher* denies negligence on his part and alleges that the collision was due to the negligence of his codefendant. The defendant *Kroscher* further answered by way of a cross-complaint against the defendant company, alleging that the company was negligent in that it operated its car at an unlawful rate of speed and in a careless, negligent, and reckless manner, in violation of the ordinances of the city of Milwaukee; alleged that the collision between his automobile and the street car was due solely to the negligence of the company; that as a result thereof the defendant's automobile was damaged in the sum of $150, and demanded judgment in his favor against the company for said sum. The company demurred to the cross-complaint upon two grounds: first, that the cross-complaint does not state facts sufficient to constitute a cause of action; and second, the cause of action is not pleadable by way of a cross-complaint in the action. The demurrer was overruled, and from the order overruling the demurrer the defendant company appeals.

For the appellant there was a brief by *Van Dyke, Shaw, Muskat & Van Dyke* of Milwaukee, and oral argument by *Carl Muskat.*

For the respondent *Kroscher* there was a brief by *Dale C. Shockley,* attorney, and *Edgar P. Ettenheim,* of counsel, both of Milwaukee, and oral argument by *Mr. Ettenheim.*

ROSENBERRY, J. The question raised here is whether or not the matter set out in the cross-complaint is pleadable in this action. A determination of the question raised involves a consideration and construction of the provisions of sec. 2656a, Stats., the material portions of which are as follows:

*"Cross-complaint.* Section 2656a. A defendant . . . may have affirmative relief against a codefendant, . . . but in all such cases such relief must involve or in some manner affect the contract, transaction or property which is the subject matter of the action."

By statutory provision the question as to whether or not the matter set out in a cross-complaint is pleadable in the action may be raised by demurrer.

The use of the words "transaction," "subject of the action," "subject matter of the action," and "cause of action" has given rise to considerable controversy and has been the subject of much discussion both by courts and text-writers. See Pomeroy, Code Remedies (4th ed.) p. 479 and following pages. The matter has received the careful consideration of this court and we shall endeavor to interpret the language of sec. 2656a in accordance with the definitions and principles laid down in prior decisions.

In *McArthur v. Moffet,* 143 Wis. 564, 128 N. W. 445, the whole matter was reviewed by Mr. Chief Justice WINSLOW, speaking for the court, and it was there said:

"The word 'transaction' was intended to define one thing and the words 'same subject of action' another and different thing, and both were intended to define a different thing from the words 'cause of action.' To hold that any two of

these three terms mean the same thing is to make nonsense of the whole phrase."

The matter under consideration in *McArthur v. Moffet* was sec. 2647, which then read:

*"Uniting causes of action.* Section 2647. The plaintiff may unite in the same complaint several causes of action, whether they be such as were formerly denominated legal or equitable, or both, where they arise out of:

"(1) The same transaction or transactions connected with the same subject of action; or

"(2) Contract, express or implied; or

"(3) Injuries, with or without force, to person or property or either; or

"(4) Injuries to character; or

"(5) Claims to recover real property, with or without damages for the withholding thereof, and the rents and profits of the same; or

"(6) Claims to recover personal property, with or without damages for the withholding thereof; or

"(7) Claims against a trustee by virtue of a contract or by operation of law."

In that case the complaint was in two counts. The first stated a statutory cause of action under sec. 3186, Stats., to quiet plaintiff's title to a number of tracts of unoccupied land to which the defendants made some claim. In the second count a cause of action was stated to recover damages for trespass and cutting of timber on said lands prior to the commencement of the action. A demurrer to the complaint for improper joinder of causes of action was over-ruled. The defendants appealed and upon appeal the order was affirmed. The exact question presented in that case was whether a statutory cause of action to quiet title to land and a cause of action for trespass on the same land arose out of the same transaction or transactions connected with the same subject of the action.

In *Telulah P. Co. v. Patten P. Co.* 132 Wis. 425 (112 N. W. 522), at page 430 it was said: "The subject of plaintiff's

action is his right and the invasion of that right by the defendant."

In *McArthur v. Moffet, supra,* the court said, speaking of this definition:

"If the phrase stood alone, this might be logically correct; but when we face the fact that we must differentiate *subject of action* from *cause of action,* and when we also know that the definition last quoted *must* be applied to *cause of action,* we must find some other meaning for subject of action."

The court then held that the subject of the action must mean not only the land but the plaintiff's right to the land, in that "both land and title must exist together if the plaintiff have any standing in any court or any right to ask for affirmative action by a court of justice in his behalf." Page 587.

It was further held:

"But if it were to be held that the words in question refer only to specific real and personal property, then they could not apply to the actions involving only rights and wrongs not connected with specific property, and as to these latter actions, comprising the great mass of ordinary litigation, there would either be no subject of action at all or the subject of action would be something of entirely different nature. . . . *If some essential basic element can be found which inheres in all causes of action, local as well as transitory, real as well as personal, which, in actions involving specific property, can be joined with the specific property, both together forming the subject, and which in other actions can stand alone* or in connection with the intangible thing involved, like the character in slander, and form the subject, it would seem that this might be said to solve the problem.

"It seems to us that this basic and fundamental element is to be found in the plaintiff's *main primary right* for the invasion of which the action is brought. . . . We think the principle will be found to be capable of satisfactory application to actions not involving property, but simply involving personal rights and wrongs."

It is clear that in *McArthur v. Moffet* the court defined "subject of action" so as to include, in cases involving tangible property, the property itself, together with the party's right or title to the property. In actions involving tangible property, real or personal, the plaintiff's main primary right, which constitutes the subject of the action, is the property and the plaintiff's right or title thereto, and upon the property being injured or the right being invaded a cause of action springs into existence.

It may be noted here that sec. 2647 was amended by ch. 219 of the Laws of 1915, and that as amended it now reads: "The plaintiff may unite in the same complaint several causes of action, whether they be such as were formerly denominated legal or equitable or both," thus removing all restrictions, depending upon the nature of the transaction or transactions, connected with the subject of the action.

Applying the principles laid down in *McArthur v. Moffet, supra,* to the present action, which does not involve either personal or real property, the subject of the action is the plaintiff's right to have the defendants exercise ordinary care in respect to her person; and it is for the invasion of that right that the plaintiff brings this action.

Whether or not the defendant *Kroscher* may set up by way of cross-complaint a cause of action and demand affirmative relief against his codefendant depends upon whether or not the relief which *Kroscher* asks involves the transaction which constitutes the subject matter of plaintiff's action. In *McArthur v. Moffet* (p. 585) it is held that the words "subject of action" and "subject matter of action" refer to the same thing. The subject matter of the action then in this case is the plaintiff's right to have the defendants exercise the required degree of care in respect to her. Manifestly, the relief demanded by *Kroscher* in his cross-complaint against the company in no way involves or affects the plaintiff's main primary right. *Kroscher's* cause of ac-

tion, if any he has, arose by reason of the failure of the company to exercise the required degree of·care in respect to him, and it was entirely complete before plaintiff's cause of action arose. It cannot therefore be said logically that the relief demanded by *Kroscher* in his cross-complaint involves in any respect the transaction which is the subject matter of the plaintiff's action or her main primary right. The mere fact that the two occurrences were nearly contemporaneous in time in no manner affects the question. The thing that we are here concerned with is the "transaction" which is the subject matter, of the plaintiff's action or the subject of her action. Much confusion arises by reason of the fact that the word "transaction" has two distinct meanings as used in these statutes.

This was pointed out in *Emerson v. Nash,* 124 Wis. 369 (102 N. W. 921), at page 388, and the definition of "transaction" there stated was expressly approved in *McArthur v. Moffet,* 143 Wis. 564 (128 N. W. 445), at page 572, with the suggestion that the definition did not require both persons to be physically present at the time the cause of action arose. In *Emerson v. Nash* the court had under consideration a statute relating to the joinder of causes of action by plaintiff and pointed out the fact (p. 389) that the word was used in two distinct senses in sub. 1 of sec. 2647 set out *supra,* without attempting to discuss the second meaning of the word.

These two meanings are clearly indicated by the supreme court of Oklahoma in *Stone v. Case* (34 Okla. 5, 124 Pac. 960) 43 L. R. A. N. s. 1168, beginning on page 1191:

"It must be observed, however, that the term [transaction] has two distinct meanings in law; that it is used for two distinct purposes: one, when used as expressive of an entire scheme, system, project, or business deal; the other, *when used to encompass the acts, and only such acts, or group of acts, as constitute a cause of action.* All the connected or dependent acts which constitute one entire system or deal

may properly be referred to as a 'transaction' in one sense of the term,—in the sense it is used in the first clause of the statutes [counterclaim],—and yet within that one transaction may be several acts, or groups of acts, which constitute a cause of action, *and each such act, or group of acts, may properly be referred to as a 'transaction,'* in the other sense of the term,— in the sense it is used in the second clause of the statute. Now, in that section of the Code which provides that plaintiff may unite several causes of action in the same petition, where they arise out of the same transaction, the term is there used as expressive of one entire system of acts, or one entire project or deal, and not in the sense of encompassing a group of acts which constitute a cause of action. To use the term in the latter sense would render it an absurdity."

Failure to distinguish between the act, in cases of the sort under consideration here, which gives rise to the plaintiff's cause of action and was therefore a transaction, and the group of acts which constitute an occurrence and are called a transaction, it being intended to include, in a broad sense, all that occurred at a given time and place, is responsible to some extent for the conflicting views entertained as to the meaning of these words in the various sections.

The statute does not say that one defendant may set up in a cross-complaint a cause of action against a codefendant arising out of the same transaction out of which the plaintiff's cause of action arose. He may do so only when the *relief* demanded involves the transaction which constitutes the subject matter of the plaintiff's action. In this case the defendant *Kroscher* demands a money judgment against his codefendant. The granting of this relief to *Kroscher* does not in the slightest degree involve the act by which the plaintiff's main primary right was invaded, which is the subject matter of her action. It will not diminish by a single cent the amount of her recovery. If she establish the allegations of her complaint, her rights will be in no way affected by the relief which may be granted to the defendant *Kros-*

*cher.* If we accept the allegations of the cross-complaint as true, *Kroscher* is suing for the invasion of one primary right, the plaintiff is suing for the invasion of an entirely distinct and different primary right, and the right of the defendant *Kroscher* to relief is wholly independent of the plaintiff's right, as much so as if the injuries complained of had risen upon a different day and at a different place. The trial court therefore was in error in overruling the defendant company's demurrer.

The history of sec. 2656a throws some light upon its construction. It was introduced into our statute law by the revisers of 1898. In the note to the statute it is said, speaking of the section:

"Proposed by the revisers of 1898, and amended by the committee on revision. The necessity of some provision for cross-relief between defendants has long been apparent in the practice in the state. The revisers attempted to draw a section which it is hoped will cover the ground or lead to some better provision. It is founded on the decisions in this and other states as well as on some of the statutes upon the subject."

Notes to the section when it first appeared as sec. 2656a, Stats. 1898, indicate that it was intended to meet the situation commented upon by the court in *Kollock v. Scribner*, 98 Wis. 104, 73 N. W. 776, which was decided December 10, 1897. In that case two causes of action were set forth in the complaint, one for specific performance and the other to quiet title. The demurrer of the defendant Scribner to the complaint was sustained upon the ground that it appeared from the facts set forth in the complaint that the plaintiff was entitled to hold the leased premises for an additional term by extension of the old lease under the agreement for renewal and was not entitled to a new lease. The defendant Kaiser answered setting up facts entitling him to relief against his grantor, the defendant Scribner, on the covenants in his deed by virtue of which he claimed an abatement of

Liebhauser v. Milwaukee E. R. & L. Co. 180 Wis. 468.

the amount of the purchase money to the extent of the damages that would result to him from the plaintiff's claim for a renewal of the lease if the plaintiff were successful. The defendant Scribner moved the court to strike out that part of the answer constituting or tending to set up a cause of action against her. The motion was denied and the court ruled that the answer might stand as a cross-complaint by the defendant Kaiser against his codefendant, and thereupon Scribner demurred because several causes of action were improperly joined and failure to state facts sufficient to constitute a cause of action. The demurrer was overruled. The plaintiff then appealed from the order sustaining the demurrer of the defendant Scribner, and Scribner appealed from the order overruling her demurrer to the cross-complaint of the defendant Kaiser. The court said:

"It follows, without room for reasonable controversy, that the counterclaim of the Code, in equitable actions, is a substitute for the cross-bill of the former equity practice, where the affirmative relief sought by the defendant is against the plaintiff, and that the provisions of law permitting defendants to litigate between themselves *matters germane to the subject of the complaint, carries with it the right of the defendant seeking relief in that regard to serve an answer in the action in the nature of a cross-bill, setting up the facts and claiming such relief.* Such an answer, however, is essentially a Code pleading, and though the court may require it to be served on the defendant affected thereby, such service is not necessary unless so ordered to preserve the right of the party to have the questions presented by such answer tried and settled by the decree, if the codefendant affected is before the court. . . .

"It follows that a defendant, in any case where the court has jurisdiction to grant him affirmative relief, may set up the facts entitling him thereto by answer in the nature of a cross-bill, if he is not so circumstanced as to set up the same by way of counterclaim. It is also the proper practice to serve the answer on the defendant affected thereby, and proper for the court, in the exercise of its inherent power,

to require such service to be made, and to cause the issues to be narrowed and sharply presented for adjudication by requiring the defendant against whom relief is sought to plead to the answer setting up the cross-demand."

In view of the fact that the revisers had before them the situation presented by the facts in *Kollock v. Scribner,* it cannot be doubted that by the use of the words, "But in all such cases such relief must involve or in some manner affect the contract, transaction or property which is the subject matter of the action," they intended to limit the right of the defendant to file a cross-complaint to cases where the relief demanded in the cross-complaint involved or affected the subject matter of the plaintiff's action.

To construe the section in accordance with the contention of the defendant *Kroscher* would require us to ignore the limitation so carefully expressed in the last clause of the section and to construe the section as if it read: "A defendant may have affirmative relief against a codefendant whenever a cause of action arose out of the contract, transaction or property out of which the plaintiff's cause of action arose," using the word "transaction" in its broadest sense. If any effect whatever is to be given to the phrase that the relief demanded must involve the transaction which is the subject matter of the action, the word "transaction" must be held to be used in its limited sense as referring to that act or acts which constituted the invasion of the plaintiff's main primary right and from which the plaintiff's cause of action springs.

When sec. 2656a was first before this court it was said in *Dusick v. Green,* 118 Wis. 240, 95 N. W. 144:

"That section regulates, and to some extent restrains, the former practice, by which one defendant might obtain affirmative relief against another, the right to which already existed, on general principles of equitable procedure."

This indicates that it was not supposed to expand the class of cases in which cross-complaints might be filed, but

rather to limit the practice as indicated in *Kollock v. Scribner*, 98 Wis. 104, 73 N. W. 776.

It is interesting to note that four states have statutes similar to ours: California, Idaho, Iowa, and Utah. Under the California Code it was at first held that a cross-complaint seeking affirmative relief could not be filed in an action of tort. *Heilbron v. Kings River & F. C. Co.* 76 Cal. 11, 17 Pac. 933. This decision was, however, overruled in *Van Bibber v. Hilton*, 84 Cal. 585, 24 Pac. 308, 598. This case probably affords as good an illustration as any of a case where a cross-complaint is proper in a tort action. The matter under consideration there was the right of a riparian owner to withdraw water from a stream for the purpose of irrigation. The final determination of the matters set out in the cross-complaint in the action would affect not only the defendant against whom the cross-bill was filed but also the rights of the plaintiff.

The Utah statute was considered in *Culmer v. Caine*, 22 Utah, 216, 61 Pac. 1008. That was an action upon contract, involving the question of mechanics' liens.

The Idaho statute was interpreted by the courts of that state in *Murphy v. Russell & Co.* 8 Idaho, 151, 67 Pac. 427. See, also, article on "Cross-complaints," 6 Stand. Ency. of Procedure, 296.

In *Dahlman v. Milwaukee,* 130 Wis. 468, 110 N. W. 483, the court had before it the provisions of sec. 2656a in an equitable action relating to the reassessment of taxes. The court said:

"Thus it will be seen that since respondent by answer or cross-complaint claimed affirmative relief against his code-fendant [the city], the appellant, it was competent for the court to determine the ultimate rights of the two in respect to the matter *so far as such determination affected the transaction which was the subject matter of the action.* That such transaction was the assessment of benefits and damages as to the plaintiffs' property in respect to the improvement of the street in question and the validity of the determination

as to the proportion of the cost of such improvement chargeable to plaintiffs' land and the proportion payable otherwise, does not seem to be open to reasonable controversy." Citing *Kollock v. Scribner,* 98 Wis. 104, 73 N. W. 776.

In *First Nat. Bank v. Frank,* 131 Wis. 416, 111 N. W. 526, where the statute was again under consideration, the court said, referring to sec. 2656*a:*

"This provision is little if anything more than *an express recognition of the old equitable principle governing cross-bills,* which was really embodied in the Code prior to the passage of the section named, although the term 'cross-complaint' was not used. ( Citing *Kollock v. Scribner,* 98 Wis. 104, 73 N. W. 776.) *The equitable principle was that the matters set up in a cross-bill must be germane to the matter involved in the original bill, and must be such as it is necessary for the court to have before it in deciding the questions raised in the original suit to enable it to do full and complete justice to all parties before it in respect to the cause of action on which the plaintiff's right rests."*

In *Schenck v. Sterling E. & C. Co.* 151 Wis. 266, 138 N. W. 637, 769, the court in respect to sec. 2656*a* said:

"We think this statute does not apply because the defendant is not entitled to any affirmative relief in this action against Feasley. It is true, it attempts to set up an equitable counterclaim, but that counterclaim states no cause of action against the plaintiffs or against Feasley.

"Furthermore, *the relief sought does not affect the contract involved in this case.* It does not even assist in determining whether or not that contract was made. It is perfectly competent for the defendant to show that Feasley claims to have procured or did procure the purchasers, without bringing Feasley in as a party. So the *relief* sought would neither assist in determining whether a contract had in fact been made or whether the plaintiffs had earned the money claimed thereunder if one was made. . . .

"The making of the contract alleged in the complaint was the transaction out of which the cause of action arose in the instant case. We fail to see how the relief sought affects that transaction."

A good illustration of the application of the statute is given in *Schmuhl v. Milwaukee E. R. & L. Co.* 156 Wis. 585, 146 N. W. 787. In that case an action was begun by the plaintiff, a passenger, against the defendant company for damages for an assault alleged to have been committed upon the plaintiff by an employee of the defendant. The defendant asked leave to file a cross-complaint and have the conductor employee brought in. The motion of the company was denied and an appeal taken. It was intimated that the proceeding was proper, but that sec. 2656*a* conferred a discretionary power upon the court, and that an order denying the motion was not an appealable order. It is to be noted in that case that the act, the striking of the passenger by the conductor, which resulted in an invasion of the plaintiff's main primary right and so gave rise to her cause of action, was the same identical act which constituted a violation of the conductor's duty to the company.

In *Miley v. Heaney,* 163 Wis. 134, 157 N. W. 515, the court, speaking by Mr. Justice SIEBECKER, said:

"It is manifest that it is the purpose of the complaint and the answer and the cross-complaint to express one object, namely, to have the rights of the parties arising out of the subject matter adjudicated. The allegations of these pleadings show that each party to the action asserts rights and charges liabilities which relate to the transactions, contracts, and property involved and which, under the allegations, affect each party to the action."

The conclusion we have reached is amply sustained by authority, both in prior decisions of this court and elsewhere. The question would be quite worthy of the attention which we have given it if we were to consider nothing but the correct interpretation of the statute. A careful study of the matter, however, convinces us that the revisers intended to limit the cases where cross-complaints might be filed to those where the rights of the plaintiff were necessarily involved. Underlying this is a sound public

policy.  Plaintiff should have a right to bring her action and obtain an adjudication of her rights without being compelled to become a mere observer in a contest between two defendants which in no way whatever concerns her.  In the present case it is conceivable that the plaintiff might establish without difficulty a right of recovery against both defendants and be entitled to receive compensation for the injuries complained of, and yet the determination of her right might be compelled to await the issue of long litigation between the defendants, in which she was in no way concerned and in which the act by which her main primary right was invaded was in no way involved.  There can be but one judgment in the action.  To make the plaintiff's right to judgment dependent upon final adjudication of an independent controversy existing between the defendants is in effect to grant her the right to appeal to the courts upon a condition.  This should not be.  It is quite apparent that the revisers foresaw that such situations might arise and carefully limited the right of a defendant to demand relief of a codefendant to those cases in which the relief demanded affects the plaintiff's rights.

*By the Court.*—The order appealed from is reversed, and cause remanded with directions to sustain the demurrer and for further proceedings according to law.

VINJE, C. J. (*dissenting*).  In *McArthur v. Moffet,* 143 Wis. 564, 128 N. W. 445, the statute construed was sub. 1, sec. 2647, reading in part, "arise out of the same transaction or transactions connected with the same subject of action." In the case at bar the statute, sec. 2656a, giving a defendant relief against a codefendant, reads: "but . . . such relief must involve or in some manner affect the contract, transaction or property which is the subject matter of the action."

In the *McArthur Case* the term "cause of action" was held to include "the facts showing plaintiff's right and its violation by the defendant."  The term "transaction" was held

to include "whatever may be done by one person which affects another's rights, and out of which a cause of action may arise." . The term "subject of action" was left undefined, as our cases were in conflict respecting it.   The definition that it is the "plaintiff's right and the defendant's invasion thereof" was withdrawn, obviously because that is the technical definition of a cause of action.

The word "transaction" in the statute now construed is as broad as in the statute construed in the *McArthur Case,* and the term "subject matter of the action" is at least as broad as the term "subject of the action."   *McArthur v. Moffet,* 143 Wis. 564, 128 N. W. 445.

The subject of an action always embraces the physical facts out of which springs a violation of rights.   That a correct complete definition of a "cause of action" must embrace the physical facts or transactions out of which the right to relief springs is obvious because every action involves not only an abstract conception such as the "invasion of plaintiff's right by defendant" but also a concrete state of facts, objects, or transactions out of which such invasion arises. Thus the circuit court for Dane county has jurisdiction of "a cause of action to quiet title to land," but if it is alleged that the land lies in Douglas county it has no jurisdiction thereof—showing that the whole cause of action includes the physical facts, transactions, or objects out of which the violated right springs.   A complete cause of action cannot be stated in the abstract merely.   The violated right must attach to concrete facts, objects, or transactions out of which the cause of action springs.   It is these concrete, tangible facts, objects, or transactions that constitute the subject of the action, and not "plaintiff's right to have the defendants exercise ordinary care in respect to her," as stated in the court's opinion.   That is again reverting to the abstract definition of the term "subject of action," which was repudiated in the *McArthur Case.*

The court's opinion also seems to hold that there can be

Liebhauser v. Milwaukee E. R. & L. Co. 180 Wis. 468.   Dissent.

no cross-complaint unless the relief of the cross-complainant affects the relief of the plaintiff, for it is said:

"The granting of this relief to *Kroscher* does not in the slightest degree involve the act by which the plaintiff's main primary right was invaded, which is the subject matter of her action.   It will not diminish by a single cent the amount of her recovery.   If she establish the allegations of her complaint, her rights will be in no way affected by the relief which may be granted to the defendant *Kroscher*."

And at the close of the opinion it is said:

"It is quite apparent that the revisers . . . limited the right of a defendant to demand relief of a codefendant to those cases in which the relief demanded affects the plaintiff's rights."

If so, then each defendant must be a necessary party because plaintiff's rights cannot be adjudicated without an adjudication of their rights, if they affect plaintiff's.   But both defendants are not necessary parties.   Plaintiff can sue them jointly or separately and her rights can be fully adjudicated without the presence of both.   The statute does not contain a syllable that suggests that the cross-complaint must affect plaintiff's rights.   It is sufficient that it involves the transaction which is the subject matter of plaintiff's action, which in this case was the collision.   It was through the one and same collision that separate primary rights are claimed to have been invaded.

If the court's abstract definition of "subject of action" is adhered to it not only nullifies what is said with reference thereto in the *McArthur Case* because it leaves out the concrete physical objects or facts, but it renders it impossible ever to have a cross-complaint, since the invasion of two separate personal rights always constitutes two separate, distinct, abstract conceptions of tort, and there would never be room for the application of the statute.

In the present case the "transaction" which constitutes the subject matter of the action was the collision that took place between the parties.   The relief which each party

seeks involves this transaction and every requirement of the statute entitling a codefendant to a cross-complaint is met. It is sufficient that the transaction out of which several rights spring is common to them all. It is not necessary that the transaction or the rights springing therefrom should be identical as to each. If so, there never could be a cross-complaint.

I think it is clear that the legislative intent was that when two or more separate causes of action in favor of different persons, one a plaintiff and another a defendant, arose out of the same set of physical facts or transactions, they could be tried in one action by way of cross-complaint. It may not prove to be good practice, but that I think is what the legislature intended. At any rate, if a plaintiff sues two joint tortfeasors he cannot complain because his action may have to await the termination of a cross-complaint action, for he was under no compulsion to sue both. He could have sued either one separately.

I am authorized to state that Mr. Justice ESCHWEILER and Mr. Justice JONES concur in this dissenting opinion.